**Michael H. POPKO, Plaintiff,**

v.

**CITY OF CLAIRTON, Defendant.**

**Joseph J. MAYZEL, Plaintiff,**

v.

**CITY OF CLAIRTON, Defendant.**

Civ. A. Nos. 82–1027, 82–1028.

United States District Court,
W.D. Pennsylvania.

Aug. 22, 1983.

Jean M. Simmonds, Pittsburgh, Pa., for plaintiffs.

Robert D. Baird, Sol., Clairton, Pa., for defendant.

## OPINION

MANSMANN, District Judge.

This matter is before the Court on Motions for Summary Judgment filed by

Plaintiffs Michael H. Popko and Joseph J. Mayzel as well as by Defendant City of Clairton ("Clairton").[1] Plaintiffs are firefighters who were allegedly "laid-off" in contravention of federal law prohibiting age discrimination. For the reasons set forth below, we hereby grant Plaintiffs' Motions and deny Defendant's Motions.

\* \* \*

## FACTS

Both Plaintiffs in these actions were formerly firefighters employed by the City of Clairton. In early 1982, Clairton initiated a reduction-in-force for budgetary reasons. Selections for the reduction-in-force were made pursuant to § 11 of the Pennsylvania Third Class City Firemen's Civil Service Code ("Code"), as amended, 53 P.S. § 39871.[2]

**1.** This Court consolidated the two suits on September 24, 1982. These two cases involve an issue similar to that presented in another case before this Court, *EEOC v. City of New Castle and Commonwealth of Pennsylvania* (Civil Action No. 82–1881).

**2.** Section 11 of the Pennsylvania Third Class City Firemen's Civil Service Code provides:

If for reasons of economy, or other reasons, it shall be deemed necessary by any city to reduce the number of paid members of any fire department, or the number of fire alarm operators or fire box inspectors in the bureau of electricity, then such city shall follow the following procedure:

First. If there are any paid firemen, fire alarm operators or fire box inspectors eligible for retirement under the terms of any pension fund, *then such reduction in numbers shall be made by retirement on pension of all the oldest in age and service.*

Second. If the number of paid firemen, fire alarm operators and fire box inspectors eligible for retirement under the pension fund of said city, if any, is insufficient to effect the reduction in number desired by said city, or if there is no eligible person for retirement, or if no pension fund exists in said city, then the reduction shall be effected by suspending the last man or men, including probationers, that have been appointed. Such removal shall be accomplished by suspending in numerical order, commencing with the last man appointed, all recent appointees until such reduction shall have been accomplished ... (emphasis added).
53 P.S. § 39871.

Plaintiffs Popko and Mayzel were among those selected for the reduction-in-force. Mr. Popko was 57 years old when he was laid-off; Mr. Mayzel was about 50 or 51 years old at the time he was laid-off. Both Plaintiffs were chosen for the reduction because of and in accordance with § 11 of the Pennsylvania Third Class Firemen's Civil Service Code, as amended, 53 P.S. § 39871.

Plaintiffs filed the present action[3] alleging that their selection constitutes age discrimination prohibited by the Federal Age Discrimination in Employment Act ("ADEA" or "Act"), as amended, 29 U.S.C. § 623(a) and (f)(2).[4]

Both Plaintiffs have moved for summary judgment, alleging that their selection for the reduction-in-force, mandated by the cri-

**3.** There is no dispute that both Plaintiffs timely filed age discrimination charges with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission.

**4.** Section 623(a) provides:
It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
(3) to reduce the wage rate of any employee in order to comply with this chapter.
29 U.S.C. § 623(a).
Section 623(f)(2) provides:
It shall not be unlawful for an employer, employment agency, or labor organization—
(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, *except that* no such employee benefit plan shall excuse the failure to hire any individual, and *no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual* specified by section 631(a) of this title because of the age of such individual ... (emphasis added).
29 U.S.C. § 623(f)(2).

teria set forth in 53 P.S. § 39871, violates the ADEA as a matter of law.

Defendant has also moved for summary judgment, contending that its actions do not violate the ADEA because the reduction was conducted for budgetary reasons and the selections were based upon eligibility for pension.[5]

\*　　\*　　\*

Under Fed.R.Civ.P. 56(c), summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court of Appeals for the Third Circuit has made clear that any doubts as to the existence of genuine issues of fact are to be resolved against the moving parties. *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). Further, the facts and the inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Continental Ins. Co. v. Bodie, supra* at 438; *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981).

Cross-motions for summary judgment are no more than a claim by each side that it alone is entitled to summary judgment. *Rains v. Cascade Industries, Inc.,* 402 F.2d 241, 245 (3d Cir.1968). "(A) party moving for summary judgment concedes the absence of a factual issue and the truth of the non-moving party's allegations only for purposes of his own motion." 10A Wright, Miller and Kane, FEDERAL PRACTICE AND PROCEDURE § 2720 at 20 (1983).

If, however, there is no genuine factual issue and one or the other party is entitled to prevail as a matter of law, summary judgment is appropriate. *Id.* at 25.

In the consolidated cases before us, both sides agree and the record reflects · that there are no genuine factual issues and that the only question presented is one of law.[6] Therefore, we shall proceed to consider the merits of the dispute.

\*　　\*　　\*

The ADEA prohibits the discharge or involuntary retirement of an individual because of his or her age. *See* 29 U.S.C. § 623(a)(1) and (f)(2). The protection of the ADEA is limited to those who are at least 40 years old but less than 70 years old. *See* 29 U.S.C. § 631(a).

The Act does permit discrimination based on age "where age is a *bona fide* occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1). This exception is known as the "BFOQ" exception.

The Act also allows the observance of a *bona fide* seniority system or *bona fide* employee benefit plan such as a retirement, pension or insurance plan *except that an employer may not use such a plan to require or permit the involuntary retirement of an employee.* 29 U.S.C. § 623(f)(2). The purpose of this provision is "to facilitate the hiring of older employees by permitting their employment without necessarily providing equal benefits under employee benefit plans." S.Rep. No. 493, 95th Cong., 2d Sess. 9, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 512.

Prior to the addition in 1978 of the statutory exception concerning involuntary retirement, the courts had held that forced

---

**5.** In its original Motions for Summary Judgment, Defendant also argued that application of the ADEA to the City of Clairton violates the Tenth Amendment to the U.S. Constitution. That argument is no longer viable in light of the Supreme Court's decision in *EEOC v. Wyoming,* —— U.S. ——, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). In that case, the Court held that the extension of the ADEA to cover state and local governments was not precluded by the Tenth Amendment but rather was a valid exercise of

congressional power under the Commerce Clause.

**6.** Thus, although the City of Clairton argues that its actions were motivated by economic and budgetary considerations and were based upon eligibility for pension, Defendant agrees that its selections were made in accordance with and pursuant to § 11 of the Pennsylvania Third Class City Firemen's Civil Service Code, 53 P.S. § 39871.

or mandatory retirement was permitted under the Act as long as such retirement was authorized by a *bona fide* plan. *See, e.g., United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977); *Zinger v. Blanchette,* 549 F.2d 901 (3d Cir. 1977), *cert. denied,* 434 U.S. 1008, 98 S.Ct. 717, 54 L.Ed.2d 750 (1978). Congress therefore found it necessary to clarify the original purpose of the provision—to encourage the hiring of older workers by permitting their employment without necessarily including such workers in employee benefit plans—but also to make clear that the provision was not to be used as an excuse for otherwise discriminating based upon age. *See* S.Rep. No. 493, *supra* at 9–10, *reprinted in* 1978 U.S.Code Cong. & Ad.News 512–13. In discussing the 1978 amendment, the Senate Committee on Human Resources criticized any distinction made between discharge and involuntary retirement on a pension. *Id.* at 10 and 513. "In the Committee's view, forced retirement extinguishes an individual's right to employment and is thus not excused by section 4(f)(2) unless the retirement is based on some reason other than age, such as disability or poor performance." *Id.,* U.S.Code Cong. & Admin. News 1978, p. 513.

■ The Act further provides that it is not unlawful for an employer to differentiate among employees based upon reasonable factors other than age [7] nor is it unlawful to discharge or otherwise discipline an individual for good cause. *See* 29 U.S.C. § 623(f)(1) and (3). If, however, age was a determinative factor in an employer's decision to discharge or to forcibly retire an employee, then the discharge or forced retirement runs afoul of the Act.[8] *See*

*Golomb v. Prudential Ins. Co. of America,* 688 F.2d 547 (7th Cir.1982); *Smithers v. Bailar,* 629 F.2d 892 (3d Cir.1980); *EEOC v. Baltimore and Ohio Railroad,* 632 F.2d 1107, 1109–10 (4th Cir.1980), *cert. denied,* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1010–11 (1st Cir.1979). Age need not be the sole or exclusive cause of the employer's action. *See Golumb v. Prudential Ins. Co. of America, supra* at 551; *Smithers v. Bailar, supra* at 897; *EEOC v. Baltimore and Ohio Railroad, supra* at 1110; *Loeb v. Textron, Inc., supra* at 1019. Rather, if age was a determinative factor in the decision, even in the presence of other, perhaps more compelling factors, then the discharge or forced retirement violates the Act. *See Smithers v. Bailar, supra* at 897.

■ In light of the express terms of the Act, as well as the regulations and case law, there is no question that the ADEA applies to reduction-in-force cases. *See Williams v. General Motors Corp.,* 656 F.2d 120, 128 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982) ("(I)t is beyond peradventure that (the Act) in fact covers reduction-in-force cases."). Indeed, at least one court has specifically found that the involuntary retirement of employees pursuant to a reduction-in-force, where age and service are factors used in the selection process, does violate the ADEA. *See EEOC v. Chrysler Corp.,* 546 F.Supp. 54 (E.D.Mich.1982).

In *EEOC v. Chrysler Corp.,* the court held that Chrysler's involuntary retirement of employees over 55 years of age, with at least ten years of corporate service, clearly violated the ADEA despite the economic or

---

7. Whether or not there exists reasonable factors other than age is a question which "must be decided on the basis of all the particular facts and circumstances surrounding each individual situation." 29 C.F.R. § 1625.7(b) (1982). The employer has the burden of showing that the "reasonable factor other than age" exists factually. 29 C.F.R. § 1625.7(e) (1982). It has been suggested that reasonable factors might include physical fitness requirements, so long as the minimum standards are reasonably related to the specific job to be performed and are uniformly applied, or educational require-

ments, so long as reasonably related to the job requirements and uniformly applied. *See EEOC v. County of Allegheny,* 519 F.Supp. 1328, 1335 (W.D.Pa.1981), *aff'd per curiam,* 705 F.2d 679 (3d Cir.1983).

8. "When an employment practice uses age as a limiting criterion, the defense that the practice is justified by a reasonable factor other than age is unavailable." 29 C.F.R. § 1625.7(c) (1982).

budgetary need for the reduction-in-force. 546 F.Supp. at 68.[9] The court stated that it had found no case law "to support the proposition that job elimination or a reduction in force is a factor which renders an otherwise illegal involuntary retirement lawful." *Id.* Thus the court concluded that decisions made in this manner violate the ADEA "regardless of the economic circumstances impelling the job elimination, or the generosity of retirement benefits offered to involuntary retirees." *Id.*

■ An ADEA plaintiff, like a plaintiff under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.,* may prevail if he or she can prove disparate treatment or disparate impact. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 117 (3d Cir.1983).

■ Under the disparate treatment theory, an ADEA plaintiff must show that his or her employer applied an expressly age-based standard in its treatment of plaintiff. *Id. See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because it is often difficult to obtain direct evidence of motive in these cases, the Supreme Court has set forth certain rules of proof which give a plaintiff the benefit of a presumption. The presumption favoring the plaintiff is only one of production. "The ultimate burden of persuasion remains on the plaintiff at all times; the defendant's burden is only to introduce sufficient evidence to create a genuine factual issue concerning the existence of a legitimate justification for the action." *Massarsky v. General Motors Corp., supra* at 118.

■ Under the disparate impact theory, a plaintiff must show that the employer's adverse action resulted from the application of facially neutral criteria which have a disproportionate impact on members of the protected class. *Massarsky v. General Motors Corp., supra* at 117. If the employer shows that the criteria are job related, then the plaintiff must show that there are other criteria which serve the same purpose without having the same discriminatory impact. *See Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977).

■ In the instant case, there is no dispute over the selection process used by Clairton for its reduction-in-force. Both sides agree that Plaintiffs were selected because they were among the oldest in age and service of those firefighters eligible for a pension. In this regard, the City of Clairton followed the criteria mandated by § 11 of the Pennsylvania Third Class City Firemen's Civil Service Code, 53 P.S. § 39871.[10]

Section 11 is not neutral on its face. Rather, it is specifically framed in terms of age. The Code essentially mandates the use of age as a determinative factor in choosing firefighters for a reduction. The application of such an expressly age-based standard to persons within the protected age group clearly violates the ADEA.

Further, application of the criteria dictated by 53 P.S. § 39871 clearly has a disproportionate impact on members of the protected class as well.

Eligibility for a pension is governed by other sections of Pennsylvania's Third Class City Code and by the collective bargaining agreement between the City of Clairton and the City of Clairton Firefighters Association.

Section 39321 of title 53 requires at least 20 years of continuous service "and, when any minimum age is prescribed, a minimum age of fifty years." 53 P.S. § 39321. Until 1972, applicants for any position in the fire department had to be at least 21 years old. *See* 53 P.S. § 39869 (1933). Under the 1972 amendments, applicants must be at least 18 years old. *See* 53 P.S. § 39869 (1972).[11]

---

**9.** The court's discussion of the facts reveals that eligibility for pension was unquestionably the first step in Chrysler's selection process.

**10.** We note that Clairton does not raise the "BFOQ" exception as a defense here. *See* 29 U.S.C. § 623(f)(1).

**11.** Mr. Popko and Mr. Mayzel were hired under the pre-1972 version of 53 P.S. § 39869.

The collective bargaining agreement provides that all firefighters with the rank of "fireman driver" as of December 1, 1975, are eligible for a pension after 20 years of service. Those given permanent employment after December 1, 1975, must have reached age 50 as well as have 20 years of service before being eligible for a pension. *See* Agreement, Article X, section 1 at 5.

Therefore, under the Code, all firefighters hired prior to 1972, such as Plaintiffs Popko and Mayzel, *must* be in the protected age group before they are eligible for a pension.[12] Moreover, under the collective bargaining agreement, those hired after 1975 must also be in the protected age category to be eligible because the agreement specifies a minimum age of 50. Those hired between 1972 and 1975 will be in the protected category when they are eligible for a pension if they were 20 years of age or older at the time they applied for a position in the fire department.

Hence, the vast majority of those even eligible for a pension will fall within the age group protected by the ADEA. Furthermore, the Code requires that the oldest in age and service be selected from those eligible for a pension.

Thus, it is clear that application of the criteria required by the Code will disproportionately impact on members of the protected class. Indeed, the criteria provided by 53 P.S. § 39871 effectively require this result.[13]

Eligibility for pension cannot be considered a "reasonable factor other than age." *See* 29 U.S.C. § 623(f)(1). As already discussed, use of this criterion as the first step in the selection process disproportionately impacts on the protected group. Use of age and service as additional criteria further emphasizes the disproportional nature of the impact. The facts before us are quite similar to those before the court in *EEOC v. Chrysler Corp., supra.* In that case, the court found that a similar type of selection process clearly violates the ADEA. *See also* 29 C.F.R. § 1625.7(c) (1982) n. 7 *infra* (The defense of a "reasonable factor other than age" is not available where age is used as a limiting criterion). Moreover, § 623(f)(2) effectively prohibits the use of a *bona fide* pension plan to forcibly retire an employee who is within the protected age category. *See* 29 U.S.C. § 623(f)(2). *See also EEOC v. Chrysler Corp., supra.*

Further, the budgetary considerations behind the reduction-in-force cannot be considered a "reasonable factor other than age" because the economic situation was merely the catalyst for the reduction. It is the selection process, *i.e.*, the manner in which the reduction was conducted, that violates the ADEA. *See EEOC v. Chrysler Corp., supra* at 68 (A decision or practice which uses age as a determinative factor violates the ADEA regardless of the economic circumstances impelling the job elimination).

 Finally, Clairton's duty to follow state law does not alter our conclusion. Thus, Clairton's obligations under state law also do not constitute a "reasonable factor other than age." *See EEOC v. County of Allegheny,* 705 F.2d at 682 (The plain language of § 623(f)(1) precludes such an argument). Although Clairton may have acted in good faith in implementing 53 P.S. § 39871, its good faith does not render the selection process non-discriminatory. In a very real sense, age was a determinative factor in the layoff of Plaintiffs Popko and Mayzel. It is precisely this type of practice or policy that the ADEA is designed to remedy.[14]

---

12. Under the Code, a firefighter hired before 1972 must be *at least* 41 years old to be eligible for a pension.

13. We note further that 53 P.S. § 39871 also provides an alternative criterion—seniority—in the event there are no firefighters eligible for a pension or the number of those eligible is insufficient. Selecting first the firefighters who have the least seniority would serve the same purpose as the criteria discussed above without having the same impact on the protected age group. *See Dothard v. Rawlinson, supra* at 329, 97 S.Ct. at 2726.

14. Further, "it is well-settled that under the Supremacy Clause a state statute which conflicts with a federal statute cannot stand . . .

Accordingly, we must enjoin the City of Clairton from enforcing that part of 53 P.S. § 39871 which violates the ADEA. Specifically, Clairton may not rely upon that portion which selects those eligible for pension and then further selects those "oldest in age and service" from among that group.

In their Complaints and in their Motions for Summary Judgment, Plaintiffs Popko and Mayzel request immediate reinstatement to their positions as firefighters. The Act specifically authorizes us to compel reinstatement, where appropriate, to effectuate the purposes of the ADEA. *See* 29 U.S.C. § 626(b). We see no reason why Plaintiffs Popko and Mayzel should not be entitled to reinstatement. Further, we believe that reinstatement will indeed promote the purposes of the Act.

The matter of damages shall be addressed at a future hearing. Alternatively, the parties may choose to resolve this matter by way of stipulation.

An appropriate Order follows.

### ORDER

And now, this 22nd day of August, 1983, it is hereby ORDERED that Plaintiffs' Motions for Summary Judgment in the above-captioned cases are GRANTED. Defendant's Motions for Summary Judgment are DENIED.

Defendant City of Clairton is hereby enjoined from continuing to implement that portion of 53 P.S. § 39871 described in the foregoing Opinion.

Plaintiffs Popko and Mayzel are entitled to immediate reinstatement to their positions as firefighters.

The parties may conduct discovery limited solely to the issue of damages. Said discovery shall close on October 19, 1983. A hearing on damages shall be held before this Court on October 28, 1983 at 10:00 a.m. Alternatively, the parties may choose to execute a stipulation on the matter of damages, to be submitted to the Court before October 28.

and that reliance on such an unconstitutional statute cannot justify employment discrimina-

tion." *EEOC v. County of Allegheny,* 705 F.2d at 682 (citations omitted).